A-580-876<br>
Remand: Slip Op. 21-70<br>
Court No. 19-00112<br>
POR: 12/1/2016 – 11/30/2017<br>
**Public Document**<br>
E&C/OII: DJG

*Husteel Co., Ltd. et al. v. United States*,
Consol. Court No. 19-00112, Slip Op. 21-70 (CIT June 7, 2021)

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court), issued in *Husteel II*.[1]  This action arises out of the final results in the 2016-2017 administrative review of the antidumping duty (AD) order on welded line pipe (WLP) from the Republic of Korea (Korea).[2]  The Court previously remanded to Commerce its:  (1) rejection of SeAH Steel Corporation (SeAH)'s third country sales to calculate normal value; (2) particular market situation determination and resulting adjustment to the reported cost of production for WLP; (3) reliance on the constructed value (CV) profit ratio and selling expenses calculated for Hyundai Steel Company (Hyundai Steel) in the first administrative review; (4) reclassification of NEXTEEL Co. Ltd. (NEXTEEL)'s reported losses relating to the suspended production of certain product lines; (5) adjustment to NEXTEEL's CV to account for sales of non-prime products; (6) refusal to employ its quarterly cost methodology to calculate SeAH's costs; (7) allocation of the general and administrative expenses of SeAH's U.S. affiliate Pusan Pipe

---

[1] *See Husteel Co., Ltd. et al. v. United States*, Consol. Court No. 19-00012, Slip Op. 21-70 (CIT June 7, 2021) (*Husteel II*).
[2] *See Welded Line Pipe from the Republic of Korea:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 FR 27762 (June 14, 2019) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM); *see also Welded Line Pipe from the Republic of Korea:  Amended Final Results of Antidumping Duty Administrative Review; 2016–2017*, 84 FR 35371 (July 23, 2019) (*Amended Final Results*).

America (PPA) across all of SeAH's U.S. sales of WLP sold through PPA; and (8) calculation of the rate assigned to the non-examined companies in light of any adjustments made to the calculations for either respondent stemming from the remand.  The Court sustained Commerce's First Remand Results[3] with respect to all issues, except for the adjustment to NEXTEEL's CV to account for sales of non-prime products.  Specifically, the Court remanded to Commerce to provide further explanation or reconsideration of this adjustment consistent with the Court's opinion and the U.S. Court of Appeals for the Federal Circuit (CAFC)'s ruling in *Dillinger*.[4]  In light of the Court's remand order, on remand, Commerce is reversing the adjustment made in the *Final Results* and relying on the actual costs of prime and non-prime products as reported by NEXTEEL.  As a result, the revised weighted-average dumping margin for NEXTEEL is 11.41 percent.  The weighted-average dumping margin for SeAH of 7.24 percent is unchanged from the First Remand Results.  Moreover, as a result of Commerce's recalculation of the weighted-average dumping margin for NEXTEEL, the revised review-specific rate applied to the non-selected respondents is 9.09 percent.

## II.   BACKGROUND

Commerce published the *Final Results* on June 14, 2019.[5]  In the *Final Results*, Commerce determined that NEXTEEL's non-prime merchandise could not be used in the same general applications as prime WLP and commanded significantly lower prices.  Consequently, consistent with generally accepted accounting principles, it would not be reasonable to assign full costs to these types of products, as they would not reasonably reflect the value associated

---

[3] *See* Final Results of Redetermination Pursuant to Court Remand, Consol. Court No. 19-00112, dated January 7, 2021 (First Remand Results); *see also* Corrected Final Results of Redetermination Pursuant to Court Remand, Consol. Court No. 19-00112, dated January 21, 2021.
[4] *See Husteel II* at 21-22 (citing *Dillinger France S.A. v. United States*, 981 F. 3d 1318 (Fed. Cir. 2020) (*Dillinger*)).
[5] *See Final Results*; *see also Amended Final Results*.

with the production and sale of the merchandise.[6]  Therefore, Commerce adjusted NEXTEEL's reported costs to value the downgraded non-prime products to their sale prices, and allocated the difference between the full production cost and market value of the non-prime products to the production cost of prime WLP.[7]

In *Husteel I*, the Court held that Commerce failed to explain how its methodology to adjust costs in order to account for non-prime products accords with its standard practice and why this methodology is reasonable.[8]  Consistent with the Court's opinion, on remand, Commerce provided further explanation of its adjustment of NEXTEEL's costs to account for sales of non-prime products.[9]

In *Husteel II*, the Court held that Commerce's explanation of its adjustment was problematic in light of the CAFC's holding in *Dillinger*.[10]  Accordingly, the Court remanded to Commerce for further explanation or reconsideration of this adjustment.[11]

## III.  ANALYSIS

As explained above, the Court remanded Commerce for further explanation or reconsideration in light of CAFC precedent.  For purposes of these final results of redetermination and consistent with the CAFC's decision in *Dillinger*,[12] we reversed the adjustment made in the *Final Results* and relied on the actual costs of prime and non-prime products as reported by NEXTEEL.

---

[6] *See Final Results* IDM at Comment 8.
[7] *Id.*
[8] *See Husteel Co., Ltd. et al. v. United States*, 471 F. Supp. 3d 1349, 1367 (CIT 2020) (*Husteel I*).
[9] *See* First Remand Results at 9-13 and 31-36.
[10] *See Husteel II* at 18-22 (citing *Dillinger*, 981 F.3d at 1321-24).
[11] *Id.* at 22 and 31.
[12] *See Dillinger*, 981 F.3d at 1324.

## IV.     INTERESTED PARTY COMMENTS

On August 12, 2021, Commerce released the draft results of redetermination to all interested parties and invited interested parties to comment.[13]  On August 19, 2021, we received comments from NEXTEEL;[14] Husteel Co., Ltd. (Husteel);[15] Hyundai Steel;[16] and Maverick Tube Corporation and IPSCO Tubulars Inc. (Tenaris USA), in concurrence with California Steel Industries and Welspun Tubular LLC USA (collectively, Domestic Producers).[17]  NEXTEEL, Husteel, and Hyundai Steel agreed with Commerce's position in the Draft Remand Results.  The Domestic Producers' comments are summarized below.

*Domestic Producer's Comments*

- Commerce should not reverse the adjustment to NEXTEEL's costs made in the *Final Results*.  Pursuant to *Husteel II*, Commerce should support its *Final Results* adjustment for non-prime products in the context of the CAFC's decision in *Dillinger*.  The facts underlying *Dillinger* are distinguishable from those present in the instant case.  In *Dillinger*, Commerce was relying on the respondent's price-based cost allocation records, which the CAFC determined did not reasonably reflect production costs.  In the instant case, Commerce deviated from the costs reported in NEXTEEL's books and records by adjusting the reported costs of prime WLP.[18]

- Commerce properly examined NEXTEEL's reported costs in the *Final Results* to determine whether they accurately reflected the resources used to produce WLP. Commerce's adjustment to NEXTEEL's costs in the *Final Results* followed Commerce's longstanding practice of determining whether the reported costs accurately represent the cost of the merchandise resulting from the production process and presented for sale to the market, and then determining whether any adjustment to those costs is necessary.[19]

---

[13] *See* Draft Results of Redetermination Pursuant to Court Remand, *Husteel Co., Ltd. et al. v. United States*, Consol. Court No. 19-00112, Slip Op. 21-70 (CIT June 7, 2021), issued on August 12, 2021 (Draft Remand Results).
[14] *See* NEXTEEL's Letter, "NEXTEEL's Comments on Draft Remand Redetermination," dated August 19, 2021.
[15] *See* Husteel's Letter, "Comments on the Department's Draft Results of Remand Redetermination Pursuant to Court Remand," dated August 19, 2021.
[16] *See* Hyundai Steel's Letter, "Hyundai Steel's Comments on Draft Remand Redetermination," dated August 19, 2021.
[17] *See* Domestic Producers' Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated August 19, 2021.
[18] *Id*. at 4-5 (citing *Dillinger*, 981 F.3d at 1321 and 1323).
[19] *Id.* at 5-6 (citing *Final Results* IDM at Comment 8; *Steel Concrete Reinforcing Bar from Turkey:  Final Negative Determination of Sales at Less Than Fair Value and Final Determination of Critical Circumstances*, 79 FR

**Commerce's Position:**

We disagree with the Domestic Producers. In *Dillinger*, the CAFC held that Commerce was required to rely on the actual costs of production for non-prime products.[20] In the instant case, NEXTEEL does not separately classify prime and non-prime products,[21] nor does it value these products differently for inventory purposes, but rather assigns them full cost.[22] NEXTEEL's reported costs reflect the actual costs of producing its non-prime products, as required by *Dillinger*.[23] Therefore, for purposes of this redetermination and consistent with the CAFC's decision in *Dillinger*,[24] we have continued to reverse the adjustment made in the *Final Results* and rely on the actual costs of prime and non-prime products as reported by NEXTEEL.

## V.   FINAL RESULTS OF REDETERMINATION

After recalculating NEXTEEL's weighted-average dumping margin based on the actual costs of prime and non-prime merchandise reported by NEXTEEL, the margin is now 11.41 percent.[25] SeAH's weighted-average dumping margin of 7.24 percent is unchanged from the First Remand Results.[26] The change to NEXTEEL's margin resulted in a change in the calculation of the review-specific rate applicable to the non-selected respondents, which is now

---

54965 (September 15, 2014), and accompanying IDM at Comment 15; *Welded Line Pipe from the Republic of Korea: Final Determination of Sales at Less Than Fair Value*, 80 FR 61366 (October 13, 2015), and accompanying IDM at Comment 9; and *Steel Concrete Reinforcing Bar from Mexico: Final Results of Antidumping Duty Administrative Review; 2014-2015,* 82 FR 27233 (June 14, 2017), and accompanying IDM at Comment 3.
[20] *See Dillinger*, 981 F.3d at 1324.
[21] *See* NEXTEEL's Letter, "NEXTEEL's First Supplemental Section D Questionnaire Response," dated July 3, 2018 at 6.
[22] *See* Memorandum, "Verification of the Cost Response of NEXTEEL Co., Ltd. in the Antidumping Duty Administrative Review of Welded Line Pipe from the Republic of Korea," dated December 11, 2018 at 2.
[23] *See Husteel II* at 21-22.
[24] *See Dillinger*, 981 F.3d at 1318 and 1324.
[25] *See* Memorandum, "Margin Calculations for NEXTEEL Co., Ltd. Pursuant to Draft Results of Second Remand Redetermination," dated August 12, 2021.
[26] *See* First Remand Results at 42.

9.09 percent.[27]  Because the weighted-average dumping margins and the review-specific rate are different from those in the *Amended Final Results*, we intend to issue a *Timken* notice with the amended final results should the Court sustain these final results of redetermination.

9/2/2021

X _____

Signed by: CHRISTIAN MARSH

Christian Marsh
Acting Assistant Secretary
 for Enforcement and Compliance

---

[27] *See* Memorandum, "Calculation of the Review-Specific Average Rate for the Draft Results of Second Remand Redetermination," dated August 12, 2021.