# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE CLAIRE R. KELLY

| | |
|---|---|
| HUSTEEL CO., LTD., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| NEXTEEL CO., LTD., HYUNDAI STEEL COMPANY, AND SEAH STEEL CORPORATION, | ) <br> ) <br> ) <br> ) |
| Consolidated Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| UNITED STATES, | ) Consol. Court No. 19-00112 <br> ) |
| Defendant, | ) **PUBLIC DOCUMENT** <br> ) |
| and | ) Contains No Business Proprietary <br> ) Information |
| MAVERICK TUBE CORPORATION, CALIFORNIA STEEL INDUSTRIES, IPSCO TUBULARS INC., AND WELSPUN TUBULAR LLC USA, | ) <br> ) <br> ) <br> ) |
| Defendant-Intervenors. | ) <br> ) |

## COMMENTS OF DEFENDANT-INTERVENORS MAVERICK TUBE AND IPSCO TUBULARS INC. ON COMMERCE'S REMAND REDETERMINATION

Gregory J. Spak
Frank J. Schweitzer
Kristina Zissis
Matthew W. Solomon

**White & Case LLP**
701 Thirteenth Street, N.W.
Washington, D.C. 20005
202-626-3600

*Counsel to Defendant-Intervenors Maverick Tube Corporation and IPSCO Tubulars Inc.*

Dated:  October 4, 2021

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................1 | |
| II. | BACKGROUND ..................................................................................................................1 | |
| III. | SUMMARY OF ARGUMENT .............................................................................................3 | |
| IV. | COMMERCE'S *SECOND REMAND DETERMINATION* REVERSING THE ADJUSTMENT FOR NEXTEEL'S NON-PRIME COSTS IS NOT IN ACCORDANCE WITH LAW OR SUPPORTED BY SUBSTANTIAL EVIDENCE ............................................................................................................................4 | |
| | A. | In the *Final Results*, as Further Explained in the *First Remand Determination,* Commerce Properly Adjusted NEXTEEL's Non-Prime WLP Costs in Accordance with the Statute ............................................................5 |
| | B. | Commerce's Reversal of the Adjustment to NEXTEEL's Non-Prime Costs in the *Second Remand Determination* Is Not Consistent with *Dillinger* .................8 |
| V. | CONCLUSION....................................................................................................................11 | |

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Daewoo Elecs. Co. v. United States*,
   6 F.3d 1511 (Fed. Cir. 1993) ...................................................................................................8

*Dillinger France S.A. v. United States*,
   981 F. 3d 1318 (Fed. Cir. 2020) ...................................................................................2-4, 8-11

*Dong-A Steel Co. v. United States*,
   337 F. Supp. 3d 1356 (Ct. Int'l Trade 2018) .........................................................................4, 6

*Husteel Co., Ltd. v. United States*,
   471 F. Supp. 3d 1349 (Ct. Int'l Trade 2020) ............................................................................2

*Husteel Co., Ltd.. v. United States*,
   Slip Op. 2021-70, Consol. Court No. 19-00112 (Ct. Int'l Trade 2021) ...................... 1-2, 8, 10

*Jinan Yipin Corp. v. United States*,
   800 F. Supp. 2d 1226 (Ct. Int'l Trade 2011) ............................................................................7

*Koyo Seiko Co. v. United States*,
   36 F.3d 1565 (Fed. Cir. 1994) ..................................................................................................7

*Ningbo Dafa Chem. Fiber Co. v. United States*,
   580 F.3d 1247 (Fed. Cir. 2009) ................................................................................................7

*Ta Chen Stainless Steel Pipe Inc. v. United States*,
   298 F.3d 1330 (Fed. Cir. 2002) ................................................................................................4

### STATUTES AND REGULATIONS

19 U.S.C. § 1677b(f)(1)(A) ...............................................................................................3-4, 6, 9-10

### LEGISLATIVE MATERIALS

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep.
   No. 103-316, vol. I (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ...........................................9

## ADMINISTRATIVE DETERMINATIONS

*Certain Oil Country Tubular Goods from the Republic of Korea: Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances*,
79 Fed. Reg. 41,983 (Dep't Commerce July 18, 2014) ............................................................6

*Steel Concrete Reinforcing Bar from Turkey: Final Negative Determination of Sales at Less Than Fair Value and Final Determination of Critical Circumstances*,
79 Fed. Reg. 54,965 (Dep't Commerce Sept. 15, 2014) ....................................................... 6-7

*Welded Line Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*,
84 Fed. Reg. 27,762 (Dep't Commerce June 14. 2019),
*as amended*, 84 Fed. Reg. 35,371 (Dep't Commerce July 23, 2019)............................... passim

**I.     INTRODUCTION**

In accordance with this Court's decision and remand order in *Husteel Co. v. United States*, Consol. Court No. 19-001122, Slip. Op. 21-70 (Ct. Int'l Trade 2021) ("*Husteel II*") (ECF Nos. 103, 111), Defendant-Intervenors Maverick Tube Corporation and IPSCO Tubulars Inc. (collectively, "Tenaris USA") hereby submit comments in opposition to the *Final Results of Redetermination Pursuant to Court Remand*, Sept. 2, 2021 ("*Second Remand Determination*") (ECF No. 113) issued by the Department of Commerce ("Commerce").

In the *Second Remand Determination*, in response to the Court's second remand order, Commerce abruptly reversed its decision to make an adjustment to the costs reported by NEXTEEL for non-prime welded line pipe ("WLP") that could not be used in the same applications as prime WLP products. The background leading up to Commerce's sudden reversal is set out below. As demonstrated in this submission, Commerce's decision in the *Second Remand Determination* not to adjust NEXTEEL's non-prime costs is neither in accordance with law nor supported by substantial evidence. Commerce's *Second Remand Determination* should not be sustained and the Court should remand this matter with instructions for Commerce to reconsider this decision in a manner consistent with the statute and the record evidence.

**II.    BACKGROUND**

In the *Final Results* of the underlying review, Commerce adjusted costs reported by NEXTEEL for non-prime WLP that could not be used in the same applications as prime WLP products. *Welded Line Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 27,762 (Dep't Commerce June 14. 2019), *as amended*, 84 Fed. Reg. 35,371 (Dep't Commerce July 23, 2019), accompanying Issues and Decision Memorandum at Comment 8 ("*Final*

1

*Results*") (PR Docs. 323, 330, 344).[1]  This Court remanded this issue, *inter alia*, to Commerce for further explanation in *Husteel Co. v. United States*, 471 F. Supp. 3d 1349, 1366 (Ct. Int'l Trade 2020) ("*Husteel I*") (ECF No. 80).  In accordance with the Court's first remand instructions, Commerce identified the relevant statutory requirements and explained that "assigning full costs to {non-prime} products is not reasonable because it shifts unrecoverable costs away from prime merchandise and burdens non-prime products with costs they cannot recover above their market value." *Final Results of Redetermination Pursuant to Court Remand*, Jan. 7, 2021 ("*First Remand Determination*") (ECF No. 84).

In *Husteel II*, the Court again remanded to Commerce, this time requesting "further explanation or reconsideration" of Commerce's adjustment in light of the recent decision of the Court of Appeals for the Federal Circuit ("CAFC") in *Dillinger France S.A. v. United States*, 981 F. 3d 1318 (Fed. Cir. 2020) ("*Dillinger*").  *Husteel II* at 22.  This Court noted that the CAFC in *Dillinger* "explained that the legislative history in § 1677b(f) demonstrates Congress' clear intent that costs used to construct the value of subject merchandise 'accurately reflect the resources actually used in the production of the merchandise in question.'" *Id.* at 21 (citing *Dillinger*, 981 F. 3d at 1322).  Further, the Court stated that, since Commerce's methodology "involves using likely sales value for non-prime products instead of actual costs as reported by NEXTEEL, *Dillinger* calls into question whether or not Commerce's treatment of NEXTEEL's non-prime WLP products complies with the statute." *Id.* at 22.  Therefore, the Court concluded that "Commerce's explanation is inadequate in light of Court of Appeal's precedent," and that "the court must remand for further explanation or reconsideration." *Id.*

In response to the Court's second remand order, Commerce reversed its decision in the

---

[1] Citations to the administrative record indicate the public record document numbers ("PR Doc.") and the second remand public record document numbers ("RPR2 Doc.").

2

*Final Results* without justifying this abrupt departure. *Second Remand Determination* at 3. Commerce's "Analysis" section amounts to a two-sentence paragraph with a conclusory assertion and no additional explanation:

> As explained above, the Court remanded Commerce for further explanation or reconsideration in light of CAFC precedent. For purposes of these final results of redetermination and consistent with the CAFC's decision in *Dillinger*, we reversed the adjustment made in the *Final Results* and relied on the actual costs of prime and non-prime products as reported by NEXTEEL.

*Id.* (citing *Dillinger*, 981 F. 3d at 1324). The only additional comment Commerce provides is a brief statement in response to interested party comments:

> We disagree with the Domestic Producers. In *Dillinger*, the CAFC held that Commerce was required to rely on the actual costs of production for non-prime products. In the instant case, NEXTEEL does not separately classify prime and non-prime products, nor does it value these products differently for inventory purposes, but rather assigns them full cost. NEXTEEL's reported costs reflect the actual costs of producing its non-prime products, as required by *Dillinger*. Therefore, for purposes of this redetermination and consistent with the CAFC's decision in *Dillinger*, we have continued to reverse the adjustment made in the *Final Results* and rely on the actual costs of prime and non-prime products as reported by NEXTEEL.

*Id.* at 5 (citations omitted).

### III. SUMMARY OF ARGUMENT

In its *Second Remand Determination*, Commerce misconstrues both the *Dillinger* decision and the instructions of this Court in the second remand order when Commerce abruptly decides to reverse course and accept NEXTEEL's reported costs for non-prime WLP. Neither *Dillinger* nor this Court's second remand order mandate that Commerce mechanistically accept a respondent's reported costs. Rather, the relevant statutory provision, 19 U.S.C. § 1677b(f)(1)(A), requires that a respondent's reported costs "reasonably reflect" the costs associated with the production and sale of the merchandise. Commerce, consistent with its statutory mandate, must therefore assess a respondent's reported costs and make an independent assessment of those costs, as the expert agency charged with administering the antidumping

3

statute and conducting the administrative review of the antidumping duty order.  With respect to non-prime products, "Commerce determines whether the reported costs reasonably reflect actual costs incurred in producing the merchandise" in accordance with 19 U.S.C. § 1677b(f)(1)(A), and makes this determination by "analyz{ing} the products sold as non-prime on a case-by-case basis."  *Dong-A Steel Co. v. United States*, 337 F. Supp. 3d 1356, 1367 (Ct. Int'l Trade 2018).

Commerce's decision in the *Final Results*, as further explained in its *First Remand Determination*, was consistent with the statute, supported by record evidence, and entitled to deference.  *See Ta Chen Stainless Steel Pipe*, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (recognizing Commerce's "special expertise in administering the anti-dumping law entitles its decisions to deference from the courts").  Hence, to satisfy the second remand order, Commerce needed only to address the *Dillinger* precedent.  Commerce's adjustment of NEXTEEL's non-prime costs in the *Final Results,* which was further explained and justified in its *First Remand Determination,* is consistent with the statutory requirement that a respondent's reported costs "reasonably reflect" the costs associated with the production and sale of the merchandise.  Moreover, Commerce's adjustment is consistent with *Dillinger*.

Commerce's reversal of its decision regarding NEXTEEL's non-prime WLP costs in its *Second Remand Determination* without explanation or justification results is contrary to the antidumping statute and is inconsistent with the CAFC's decision in *Dillinger*.  The Court should remand to Commerce for a third time to issue a decision that is in accordance with law.

**IV.   COMMERCE'S *SECOND REMAND DETERMINATION* REVERSING THE ADJUSTMENT FOR NEXTEEL'S NON-PRIME COSTS IS NOT IN ACCORDANCE WITH LAW OR SUPPORTED BY SUBSTANTIAL EVIDENCE**

In its *Second Remand Determination*, Commerce suddenly and inappropriately reverses its decision to make an adjustment to NEXTEEL's non-prime costs and instead relies on the actual costs of prime and non-prime products as reported by NEXTEEL.  *Second Remand*

4

*Determination* at 3. As discussed below in Section IV.A, Commerce's decision in the *Final Results*, which Commerce explained and justified in its *First Remand Determination*, was appropriate based on the record evidence and the statutory requirements. Moreover, as discussed in Section IV.B below, the CAFC's decision in *Dillinger* does not warrant a reversal of Commerce's approach. Commerce's abrupt about-face is neither supported by record evidence nor consistent with the statute. Therefore, the Court should remand to Commerce to reconsider its reversal in the *Second Remand Determination* of its decision in the *Final Results* to make an adjustment to NEXTEEL's non-prime costs.

> **A.** **In the *Final Results*, as Further Explained in the *First Remand Determination*, Commerce Properly Adjusted NEXTEEL's Non-Prime WLP Costs in Accordance with the Statute**

In the *Final Results*, Commerce determined that NEXTEEL's reported costs for non-prime WLP did not reasonably reflect the costs associated with the sale of the merchandise, as required by the statute. *Final Results* at Comment 8. Accordingly, Commerce correctly concluded that it could not rely on those costs, and instead "adjust{ed} NEXTEEL's reported costs to value the downgraded non-prime products at their sales price, while allocating the difference between the full production cost and market value of the non-prime products to the production costs of prime-quality WLP." *Id.* at 43. In the *First Remand Determination*, Commerce further explained its decision, without making any changes. *First Remand Determination* at 9-12, 33-36. Commerce's decision in the *Final Results* not to rely on these costs was consistent with the statute and supported by substantial evidence. Therefore, Commerce's departure from this decision in the *Second Remand Redetermination* should be remanded for reconsideration.

The antidumping statute provides that a respondent's books and records are "normally" used to calculate constructed value when two criteria are satisfied. First, the records must be "in

5

accordance with the generally accepted accounting principles of the exporting country," and, second, the records must "reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A). In these circumstances, when considering reported costs for non-prime products, "Commerce determines whether the reported costs reasonably reflect actual costs incurred in producing the merchandise," as required by the statute, and makes this determination by "analyz{ing} the products sold as non-prime on a case-by-case basis." *Dong-A Steel Co. v. United States*, 337 F. Supp. 3d 1356, 1367 (Ct. Int'l Trade 2018).

In the *Final Results*, Commerce determined that NEXTEEL's non-prime product was downgraded such that it "was never certified to be sold as WLP," and it did not satisfy the API standard that governs WLP. *Final Results* at 43. As a result, "customers do not attempt to use non-prime line pipe in line pipe applications because of the potential liabilities and cost in the event of a pipe failure." *Id.* Commerce explained that it analyzes products sold as non-prime "to determine whether they are truly in the production of 'good' product or if they are more akin to yield loss and the sale of the scrapped 'bad' product in an attempt to recover whatever value they can get." *First Remand Determination* at 34. Consistent with its normal approach, Commerce explained that if "{i}f the product is not capable of being used for the same applications, the product's market value is typically significantly impaired, often to a point where its full cost cannot be recovered and *assigning full costs to that product would not be reasonable*." *Final Results* at 42 (emphasis added); *see also First Remand Determination* at 10 (citing *Certain Oil Country Tubular Goods from the Republic of Korea: Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances*, 79 Fed. Reg. 41,983 (Dep't Commerce July 18, 2014), accompanying Issues and Decision Memorandum at Comment 18; *Steel Concrete Reinforcing Bar from Turkey: Final Negative Determination of Sales at Less

*Than Fair Value and Final Determination of Critical Circumstances*, 79 Fed. Reg. 54,965 (Dep't Commerce Sept. 15, 2014), accompanying Issues and Decision Memorandum at Comment 15).

Commerce considered the evidence on the record and relied on several key facts to support its findings regarding NEXTEEL's non-prime product costs, including how NEXTEEL treated the products in its normal books and records, whether the downgraded non-prime pipe could be used for its originally-intended applications, whether the non-prime products satisfied API specifications for WLP, and whether customers consider the prime and non-prime products to be interchangeable. *Final Results* at 42-43. Based on its review of the record evidence, Commerce concluded that "assigning full costs to these products does not reasonably reflect the costs associated with the production and sale of the merchandise" and, as required by the statute, Commerce adjusted these costs. *Id.* at 43. Specifically, Commerce "adjust{ed} NEXTEEL's reported costs to value the downgraded non-prime products at their sales price, while allocating the difference between the full production cost and market value of the non-prime products to the production costs of prime-quality WLP." *Id*.

Commerce's overarching obligation in administering the antidumping law is to calculate accurate dumping margins. In the *Final Results*, Commerce ensured that NEXTEEL's costs were properly allocated in accordance with the statute. Thus, the approach taken in the *Final Results* is consistent with Commerce's obligation to "use whatever methodology will result in the most accurate antidumping margin, consistent with its statutory obligation to 'establish{} antidumping margins as accurately as possible.'" *See Jinan Yipin Corp. v. United States*, 800 F. Supp. 2d 1226, 1273 (Ct. Int'l Trade 2011) (citing *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1257 (Fed. Cir. 2009)). Commerce's approach is entitled to deference in these circumstances. *See, e.g., Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir.

1994) (citing *Daewoo Electronics Co. v. United States*, 6 F.3d 1511, 1516 (Fed. Cir. 1993)) (recognizing that "{d}eference to an agency's statutory interpretation is at its peak in the case of a court's review of Commerce's interpretation of the antidumping laws").

Commerce properly adjusted the costs for NEXTEEL's non-prime products in the *Final Results*, as further explained in the *First Remand Determination*. The original decision to adjust NEXTEEL's reported costs is supported by substantial evidence on the record and is in accordance with law, and the reversal of this position in the *Second Remand Determination* was inappropriate.

**B.    Commerce's Reversal of the Adjustment to NEXTEEL's Non-Prime Costs in the *Second Remand Determination* Is Not Consistent with *Dillinger***

In *Husteel II*, the Court remanded "for further explanation or reconsideration" in light of the CAFC's decision in *Dillinger*. *Husteel II* at 22. The Court noted that "{s}ince Commerce's methodology involves using likely sales value for non-prime products instead of actual costs as reported by NEXTEEL, *Dillinger* calls into question whether or not Commerce's treatment of NEXTEEL's non-prime WLP products complies with the statute." *Id*. The Court's remand order did not require reversal, but rather requested that Commerce "further explain or reconsider" its approach in light of *Dillinger*. However, ignoring the legal and evidentiary basis for its decision, Commerce reversed its decision from the *Final Results*, simply stating that "NEXTEEL's reported costs reflect the actual costs of producing its non-prime products, as is required by *Dillinger*." *Second Remand Determination* at 5. Commerce's reversal is arbitrary, wholly unwarranted, inconsistent with the statute, and contrary to the CAFC's holding in *Dillinger*.

In its *Dillinger* decision, which is still pending a final decision by Commerce on remand, the CAFC acknowledged that "Dillinger's records were kept in accordance with GAAP," but

8

nevertheless concluded that "Commerce erred in relying on them" because they "did not reasonably reflect the costs associated with the production and sale of merchandise as required by 19 U.S.C. § 1677b(f)." *Dillinger*, 981 F.3d at 1321.  The CAFC analyzed the legislative history of 19 U.S.C. § 1677b(f), and found that it was Congress's intent that Commerce allocate costs "using a method that reasonably reflects and accurately captures *all* of the actual costs incurred in producing and selling the product under investigation or review." *Id.* at 1323 (citing Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4172) (emphasis added).  *Dillinger* makes clear that Congress expects Commerce to "examine reported costs," rather than automatically rely on a respondent's records, and ensure that the reported costs "accurately reflect the resources actually used in the production of the merchandise in question." *Id.* at 1323 (citing S. Rep. No. 103-412, at 75 (1994)).

The facts before the CAFC in *Dillinger* are distinguishable from those in the underlying review, and the CAFC's reasoning in fact supports Commerce's approach in the *Final Results*. In *Dillinger*, Commerce *relied on* the costs in respondent's books and records, which the CAFC found to be "improper" because they did not "reasonably reflect" the costs of production and sale of the merchandise.  *Dillinger*, 981 F.3d at 1321.  In the *Final Results* here, Commerce *did not rely on* NEXTEEL's reported costs based on its books and records because NEXTEEL's reported costs did not "reasonably reflect" the costs of production and sale of the merchandise. *Final Results* at Comment 8.  Commerce's action was, therefore, consistent with the CAFC's holding in *Dillinger*:  To satisfy the statutory mandate, Commerce may *not* use the respondent's reported costs when the reported costs do not "reasonably reflect the costs associated with the production and sale of the merchandise." *Dillinger*, 981 F.3d at 1321 (citing 19 U.S.C. §

9

1677b(f)(1)(A)).  Rather than automatically using the costs in NEXTEEL's books and records, in the *Final Results* Commerce examined these costs and determined that they did not accurately reflect the costs of production and sale of the merchandise, and, therefore, could not be used.

Commerce's brief discussion of *Dillinger* in its *Second Remand Determination* does not address the statutory requirement that Commerce may use the respondent's reported costs only to the extent that they "reasonably reflect the costs associated with the production and sale of the merchandise." *Id*.  Commerce contends that "NEXTEEL's reported costs reflect the actual costs of producing its non-prime products, as required by *Dillinger*," but does not point to record evidence or address the fact that this statement contradicts its findings in the *Final Results* based on the record evidence.  *Second Remand Determination* at 5.

Indeed, Tenaris USA stated in its comments on Commerce's Draft Remand that Commerce's reversal was contrary to the statute and the record evidence, and that Commerce's approach to NEXTEEL's non-prime costs in the *Final Results* is consistent with its statutory obligation and the CAFC's holding in *Dillinger*.  *See* Letter from White & Case LLP to Sec'y Commerce, re: *Welded Line Pipe from the Republic of Korea: Final Results of Antidumping Duty Administrative Review, 2016-2017, Remand: Comments on Draft Results of Redetermination Pursuant to Court Remand* (Aug. 19, 2021) (RPR2 Doc. 6); *see also Husteel II*, *Draft Results of Redetermination Pursuant to Court Remand*, Aug. 12, 2021 (RPR2 Doc. 1).  Commerce does not address Tenaris USA's comments in the *Second Remand Determination,* but instead merely states that it "disagree{s} with the Domestic Producers."  *Second Remand Determination* at 5.  Commerce ignores Tenaris USA's statutory argument and in fact makes no mention of the statute at all.  *See generally Second Remand Determination.*  Although Commerce cites *Dillinger*, Commerce fails to address Tenaris USA's comments regarding the holding in

10

*Dillinger* and the distinctions between the facts in *Dillinger* and the underlying review. *Id*. at 5. Instead, Commerce makes the conclusory statement that "NEXTEEL's reported costs reflect the actual costs of producing its non-prime products, as is required by *Dillinger*." *Id*. Commerce's failure to address the statutory requirements and its decision to simply ignore the comments of interested parties underscores the absence of reasoning and the lack of evidence supporting Commerce's *Second Remand Determination*.

In the *Final Results*, Commerce examined the record evidence and correctly concluded that relying on NEXTEEL's treatment in its normal books and records of assigning full costs to non-prime products does not, as required by the statute, "reasonably reflect the costs associated with the production and sale of the merchandise." *Final Results* at 42-43. Accordingly, Commerce properly determined that NEXTEEL's non-prime products instead should be assigned a salvage value and made an appropriate adjustment. *Id*. As explained above, the CAFC's finding in *Dillinger* supports this decision and Commerce's reversal of this approach in the *Second Remand Determination* should not be sustained.

## V.   CONCLUSION

For the foregoing reasons, Commerce's decision not to make an adjustment to NEXTEEL's non-prime WLP costs in *Second Remand Determination* should not be sustained. Tenaris USA respectfully requests that the Court remand this matter with instructions for Commerce to reconsider this decision in a manner consistent with the statute.

        Respectfully submitted,

        <u>/s/ Gregory J. Spak</u>
        Gregory J. Spak
        Frank J. Schweitzer
        Kristina Zissis
        Matthew W. Solomon

        **White & Case LLP**
        701 Thirteenth Street, N.W.
        Washington, D.C.  20005
        202-626-3500

        *Counsel to Maverick Tube Corporation and IPSCO Tubulars Inc.*

Dated: October 4, 2021

## CERTIFICATE OF COMPLIANCE

I, Gregory J. Spak, certify that the attached brief complies with the word limitation requirement, as stated in the Standard Chambers Procedures. The word count for the Comments of Defendant-Intervenors Maverick Tube and IPSCO Tubulars Inc. on Commerce's Remand Redetermination, as computed by the White & Case word processing system (Microsoft Word 2016), is 3,350 words.

/s/ Gregory J. Spak
Gregory J. Spak